IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PHYLLIS SPENCER | : | No. |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| CITY OF PHILADELPHIA, THOMAS RYBAKOWSKI, individually and in his official capacity, PEDRO PALMER CONSTRUCTION INC. | : : : : |  |
| Defendants. | : |  |

## COMPLAINT

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Phyllis Spencer, is a resident of the Commonwealth of Pennsylvania and is the owner of real property located at 450 North 60th Street, Philadelphia, Pennsylvania (the "Spencer's Property").

2. Defendant, City of Philadelphia (the "City"), is a municipal corporation with offices located at 1515 Arch Street, Claims Unit, 14th Floor, Philadelphia, Pennsylvania 19107.

3. Defendant, Thomas Rybakowski, is a supervisor with the City's Department of Licenses and Inspections ("L&I"). Mr. Rybakowski is sued in his individual and official capacities. At all relevant times, Mr. Rybakowski maintained final decision-making authority on behalf of the city. At all relevant times, Mr. Rybakowski acted under color of state law because he was clothed with the authority of state law.

Moreover, Mr. Rybakowski's conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person knew or should have known.

4. Defendant, Pedro Palmer Construction, Inc., ("Pedro Palmer") is a Pennsylvania corporation organized with a place of business located at 2971 North Emerald Street, Philadelphia, PA 19134. At all relevant times, Pedro Palmer acted under color of state law because he was clothed with the authority of state law. Moreover, Pedro Palmer conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person knew or should have known.

5. This Court has jurisdiction pursuant to 28 U.S.C §§ 1331; 1343(1), (3), and (4); 42 U.S.C. §§ 1983 and 1985.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the action occurred within this judicial district and the City is subject to personal jurisdiction in this judicial district.

## FACTS

### A. The City's Demolition of the Spencer's Property.

7. Currently, Spencer's Property is a vacant lot, but previously on Spencer's Property there existed a one-story structure.

8. Ms. Spencer has never resided at Spencer's Property. However, Ms. Spencer used Spencer's Property for storage of construction materials and other personal property.

9. On Monday, December 18, 2023, Mr. Rybakowski called Ms. Spencer and informed her that he had decided the demolish the one-story building on

Spencer's Property, unless she took immediate action. Mr. Rybakowski did not state why he had decided to demolish Spencer's Property.

10. Pursuant to Mr. Rybakowski's demand to take immediate action, Ms. Spencer immediately engaged Mathu Davis, a licensed professional engineer, to assess the condition of Spencer's Property and to make recommendations to her for repairs.

11. On December 19, 2023 - the day after Mr. Rybakowski's phone call - Mr. Davis inspected Spencer's Property.

12. By letter dated December 19, 2023, the City sent Ms. Spencer a written "Violation Notice and Order to Correct," which stated the City had deemed the Spencer Property "Imminently Dangerous" and demanded that Ms. Spencer correct the violations identified in the notice (the "Violation Notice"). A copy of the December 19, 2023, Violation Notice is attached at **Exhibit "1."**

13. Furthermore, the December 19, 2023, Violation Notice stated that "if these violations are not corrected before 12/28/2023 the Department will take action as soon as possible to vacate and demolish the imminently dangerous structure." *Id.*

14. The Violation Notice further emphasized that "YOU ARE ORDERED TO MAKE REPAIRS AND/OR TAKE CORRECTIVE ACTION TO CORRECT THE CITED CONDITIONS PRIOR TO 12/28/23." *Id.*

15. While the Violation Notice is dated December 19, 2023, the postmark date of the Violation Notice is December 21, 2023, *see* envelope from City of

Philadelphia at **Exhibit "2,"** and Ms. Spencer did not receive the Violation Notice under December 22, 2023. *Id.*

16. Based on the representations in the Violation Notice, Ms. Spencer continued to work with Mr. Davis to prepare a corrective action plan for the City, which respond to the violations identified in the Violation Notice.

17. On December 27, 2023, one day before the City's December 28, 2023, corrective action deadline stated in the Violation Notice, Mr. Davis submitted a Structural Assessment and Repair Recommendation to the City. *See* Structural Condition Assessment of Mathu Davis, P.E., 12/27/23 at **Exhibit "3."**

18. Mr. Davis' report did not recommend demolition of Spencer's Property.

19. Ms. Spencer was prepared to complete the repairs Mr. Davis recommended.

20. However, Ms. Spencer's preparations to make the repair recommended by Mr. Davis would prove futile.

21. Unknown to Ms. Spencer at the time, on Wednesday, December 20, 2023, the City, at Mr. Rybakowski's direction, already commenced the demolition on the warehouse located at the Spencer Property, thereby, denying Ms. Spencer any opportunity to contest Mr. Rybakowski's decision to demolish Spencer's Property or to make the repairs that the City demanded.

22. The value of the warehouse that the City and Rybakowski took and demolished exceeded $100,000.

4

23. Moreover, the City and Rybakowski took and removed from Spencer's Property valuable materials and personal property valued in excess of $36,000.

24. The City has not made Ms. Spencer whole for the value of the property it took from her.

25. The City has not provided Ms. Spencer with an opportunity to seek compensation for the value of the property it took from her.

26. To make matter worse, the City billed Ms. Spencer for the costs of the demolition and asbestos abatement of Spencer's Property in the amount of $123,076.36.

27. The City seeks interest and penalty from Ms. Spencer on that amount.

28. It has also placed liens against her and threatened to take legal action against her if she did not pay the City's bills for its illegal and unconstitutional demolition of her property.

### B. The City Seizes the Spencer Property for Staging.

29. After the City completed the demolition of at Spencer's Property, Ms. Spencer secured the front and rear of the now vacant lot that remained with a wooden fence.

30. Additionally, Ms. Spencer caused to be affixed to the fence signs reading "NO DUMPING OR TRESPASSING."

31. Then, in May 2024, the City, upon information and belief, at Mr. Rybakowski's direction, removed the fence and started using Spencer's Property as a staging area for nearby construction.

32. The fence was removed and Spencer's Property occupied by the City's agent, Pedro Palmer.

33. The City, through Pedro Palmer, placed, among other items, a dumpster, construction equipment, used tires, and other materials on Spencer's Property.

34. Defendants never asked Ms. Spencer to use Spencer's Property for staging and storage, Ms. Spencer never authorized Defendants to use Spencer's Property, and, as with the demolition, Defendants took unilateral action.

35. In sum, when it comes to the constitutional rights of American citizens, Defendants shoot first and ask questions later.

C. **The City is liable for the unconstitutional actions of its employees, agents, and representatives, including Rybakowski and Pedro Palmer.**

36. Mr. Rybakowski, and other agents and representatives of the City, including Pedro Palmer, maintained final decision-making authority to make affirmative directives, decisions, or decrees regarding the demolition of Spencer's Property and the seizure of the Spencer Property for staging.

37. The City also maintains an official custom and policy of demolishing properties, like Spencer's Property, without providing property owners, like Ms. Spencer, with adequate notice or opportunity to contest the decision to demolish the property. *See e.g. Bullard v. City of Philadelphia,* 847 F.Supp.2d 711 (E.D.Pa. 2012); *Dvortsova v. City of Philadelphia*, 585 F. Supp. 3d 723 (E.D. Pa. 2022); *1716 W. Girard Ave LP v. HFM Constr., Inc.*, No. CV 16-4937, 2019 WL 801963 (E.D. Pa. Feb. 21, 2019).

38. The City maintains additional policies and practices regarding the demolition of property without adequate notice and opportunity to be heard that are so widespread as to practically have the force of law.

39. The City has failed to properly train its employees, agents, and representatives, including Mr. Rybakowski, regarding the Constitutional requirement to provide property owners notice and an opportunity to be heard prior to demolishing a property.

40. The City has failed to properly train its employees, agents, and representatives, including Mr. Rybakowski, regarding when a property must be immediately demolished.

41. The City had actual or constructive notice that the lack of training would violate Ms. Spencer's constitutional rights.

42. The need for adequate procedures and training is so obvious that inadequate procedures and training are likely to result in a violation of the constitutional rights of plaintiff.

43. Upon information and belief, the City maintains no formal training program for its inspectors, including Mr. Rybakowski, or its employees regarding their duties and obligations under federal, state, or local law concerning the due process rights of property owners or when an emergency exists that requires immediate demolition of a property.

44. Upon information and belief, the City also do not maintain a training manual or written guidance for inspectors, agents, and employees or their duties and

obligations under federal, state, or local law concerning the due process rights of property owners, when an emergency exists that requires immediate demolition of a property, and compensation that must be paid to property owner under the Fifth Amendment.

45. The City has a pattern and practice of hiring known unqualified personnel, like Mr. Rybakowski.

46. The City has a pattern and practice of taking real property for public use without paying adequate compensation.

47. The City's failure to properly train its inspectors, agents, and employees, its affirmative decision to hire unqualified personnel, and lack of protocols have resulted in a violation of Ms. Spencer's constitutional rights, including, without limitation, her Fourth, Fifth, and Fourteenth Amendment rights.

48. The need to train code enforcement officials, like Mr. Rybakowski, is obvious and the highly predictable consequence of not adequately training – or not training at all – is the violation of the constitutional property rights of citizens like Ms. Spencer.

49. The City's knowledge of prior circumstances where property was demolished without adequate notice and opportunity to be heard, demonstrate a pattern of similar constitutional violations such that the City knew or should have known that their failure to properly train their employees would have the consequence of violating the plaintiff's constitutional rights. *See e.g. Bullard v. City of Philadelphia,* 847 F.Supp.2d 711 (E.D.Pa. 2012); *Dvortsova v. City of Philadelphia*, 585 F. Supp. 3d 723

8

(E.D. Pa. 2022); *1716 W. Girard Ave LP v. HFM Constr., Inc.*, No. CV 16-4937, 2019 WL 801963 (E.D. Pa. Feb. 21, 2019).

50. Defendants inadequate and/or non-existing training caused the plaintiff's constitutional rights to be violated.

51. The City has failed to adopt adequate policies and procedures that would ensure that property owners, like Ms. Spencer, receive constitutionally required notice and an opportunity to be heard and compensation for property taken for public use.

52. The City must adopt adequate policies procedures regarding notice and opportunity to be heard before a property is demolished.

53. The City must adopt adequate policies and procedures regarding post-deprivation hearings to determine compensation to be paid to property owners.

54. The City must adopt adequate policies and procedures regarding paying just compensation for private property taken for public use.

55. The City's policy of inaction, considering the actual or constructive notice that it would cause constitutional violations, is the functional equivalent of a decision by the Defendants themselves.

56. Upon information and belief, the City, through inspectors like Mr. Rybakowski, orders demolition of properties in areas with a larger percentage of lower income and/or black residents at a higher rate than it does in areas that are predominately white or wealthy.

57. Defendants acted with deliberate indifference to the rights of plaintiff.

58. Defendants had ample time to provide notice and an opportunity to schedule a hearing yet failed to do so.

## CAUSES OF ACTION

### COUNT I
### Violation of the Fourteenth Amendment
### Procedural Due Process
### Demolition of Spencer's Property
### *Spencer v. City of Philadelphia and Rybakowski*

59. Plaintiffs incorporate the previous paragraphs by reference.

60. The 14th Amendment Due Process Clause provides that the government may not deprive any person of life, liberty, or property without due process of law.

61. Procedural Due Process requires the state to give notice and an opportunity to be heard.

62. Ms. Spencer was denied procedural due process when the City demolished her property without giving her the opportunity to be heard, to respond or correct the violations.

63. No emergency existed that would justify demolition without proper notice.

64. Alternative, to the extent competent evidence shows that an emergency did exist, the City deprived Ms. Spencer of her right to a post-deprivation hearing to compensate her for her injuries.

65. As a result of the Defendants' actions, the Plaintiff suffered substantial damages.

## COUNT II
### Violation of the Fourteenth Amendment
### Procedural Due Process
### Deprivation of Spencer's Property for Staging
### *Spencer v. all defendants*

66. Plaintiffs incorporate the previous paragraphs by reference.

67. The 14th Amendment Due Process Clause provides that the government may not deprive any person of life, liberty, or property without due process of law.

68. Procedural Due Process requires the state to give notice and an opportunity to be heard.

69. Ms. Spencer was denied procedural due process when the defendants invaded her property and used it as their own without giving her the opportunity to be heard.

70. No emergency existed that would justify defendants' invasion without proper notice.

71. Alternative, to the extent competent evidence shows that an emergency did exist, defendants' deprived Ms. Spencer of her right to a post-deprivation hearing to compensate her for her injuries.

72. As a result of the Defendants' actions, the Plaintiff suffered substantial damages.

## COUNT III
### Violation of the Fourth Amendment
### Unlawful Seizure of Property without Due Process
### *Spencer v. all defendants*

73. Plaintiff incorporate the previous paragraphs by reference.

11

74. The City seized the Spencer's Property in violation of Ms. Spencer's rights under the Fourth Amendment of the United States Constitution, made applicable to the City through the Fourteenth Amendment.

75. The Fourth Amendment of the United States provides individuals the right to be free from unreasonable seizure or destruction of property.

76. The demolition of the Spencer Property constitutes an unlawful and unreasonable seizure within the Fourth Amendment as it was done without a lawful purpose and done so intentionally.

77. The May 2024 invasion of Spencer's Property constitutes a separate unlawful and unreasonable seizure within the Fourth Amendment as it was done without a lawful purpose and done so intentionally.

78. No adequate recourse was provided whereby Ms. Spencer could challenge the actions of the Defendants.

79. Defendants actions were willful and reckless and done with complete indifference to the Plaintiff's constitutional rights.

80. As a result of the Defendant's actions, the Ms. Spencer has suffered substantial damages.

**COUNT IV**
**Violation of the Fifth Amendment**
**Taking of the Spencer Property without Just Compensation**
*Spencer v. All Defendants*

81. Plaintiff incorporates the previous paragraphs by reference.

82. "The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 184 (2019)

83. "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 189.

84. "[N]o matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." *Id.* at 190.

85. Defendants took personal property from Spencer and have refused to compensate her for it.

86. Defendants took Spencer's Property for public use when they unlawfully entered on the Spencer's Property to use it as a demolition staging area for an adjacent property.

COUNT V
Conspiracy to Violate Civil Rights
42 U.S.C. § 1985
*Spencer v. Rybakowski*

87. Ms. Spencer incorporates the previous paragraphs by reference.

88. Mr. Rybakowski and others caused to be done acts in furtherance of a conspiracy to deprive Ms. Spencer of her constitutional rights.

89. Mr. Rybakowski took overt action in furtherance of the conspiracy.

90. Ms. Spencer has suffered damages to her property because of the conspiracy.

## COUNT VI
## Trespass
### *Spencer v. all defendants*

91. Plaintiff incorporates the previous paragraphs by reference.

92. Defendants willfully entered onto Spencer's Property without Ms. Spencer's permission, without authority, and without a court order.

93. This illegal and intentional conduct constitutes an illegal trespass onto the Plaintiff's property.

94. Defendants' conduct was willful and reckless and without justification.

95. Defendant's conduct in trespassing on the Plaintiff's property has caused her substantial damages.

## COUNT VII
## Conversion
### *Spencer v. all defendants*

96. Plaintiff incorporates the previous paragraphs by reference.

97. Defendants' actions were illegal acts that deprived the Plaintiff of her property.

98. Defendants' illegally took the property owned by Ms. Spencer and interfered with her ability to use the property.

99. Defendants' conduct in trespassing on the Plaintiff's property has caused the Plaintiff substantial damage.

## DEMAND FOR RELIEF

Plaintiffs respectfully request that the court:

  a. enter a declaratory judgment that the defendants violated plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution;

  b. enter a permanent injunction against the Defendants prohibiting them, their representatives, or agents from demolition property within the City of Philadelphia without adequate notice or opportunity to be heard;

  c. enter a permanent injunction against the Defendants requiring them, their representatives, or agents to undergo proper training;

  d. enter a permanent injunction against the Defendants requiring them, their representatives, or agents to adopt adequate policies and procedures;

  e. enter a declaratory judgment that all fines, fees, and assessment levied against Ms. Spencer are void and terminated;

  f. award plaintiff compensatory damages;

  g. award plaintiff nominal damages;

  h. award plaintiff punitive damages against defendants

  i. award costs and attorneys' fees under 42 U.S.C. § 1988; and

  j. award all other relief that the Court deems just, proper, or equitable.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 10, 2025 | */s/ Walter S. Zimolong III*<br>WALTER S. ZIMOLONG III, ESQUIRE<br>wally@zimolonglaw.com<br>MEAGHAN R. WAGNER, ESQUIRE<br>meaghan@zimolonglaw.com<br>Zimolong, LLC<br>PO Box 552<br>Villanova, PA 19085-0552<br>Tele: 215-665-0842 |