**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHYLLIS SPENCER,**<br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF PHILADELPHIA, THOMAS RYBAKOWSKI, individual and in his official capacity, PEDRO PALMER CONSTRUCTION, INC.,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 25-7053** |

**MEMORANDUM**

**HODGE, J.** **September 30, 2026**

## I. INTRODUCTION

Plaintiff Phyllis Spencer ("Plaintiff") brings this action against the City of Philadelphia (the "City"), Thomas Rybakowski of the City's Department of Licenses and Inspection ("Rybakowski") (together, the "City Defendants"), and Pedro Palmer Construction, Inc. ("PPC"). Before the Court is the City Defendants' Motion to Dismiss (the "City Motion") (ECF No. 8), the opposition thereto (ECF No. 10), and the reply in support (ECF No. 13), as well as PPC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "PPC Motion") (ECF No. 24)[1] and Plaintiff's opposition thereto (ECF No. 27). For the following reasons, the City Motion is granted in part and denied in part, and the PPC Motion is denied.

---

[1] The Court notes that the PPC Motion fails to comply with the meet-and-confer requirement of the Court's Policies and Procedures and the Court's Order to do so. (ECF No. 6.) However, since both motions are now ripe for disposition, the Court rules on the merits of the PPC Motion for purposes of judicial efficiency. The Court reminds both parties that all filings must comply with the Court's Policies and Procedures and the Local Rules of Civil Procedure.

## II. BACKGROUND

### A. Factual Background[2]

In considering the facts, the Court accepts all well-pleaded facts in the Complaint (ECF No. 1) as true. Plaintiff owns a now-vacant parcel of real property located at 450 North 60th Street, Philadelphia, Pennsylvania (the "Property"). (ECF No. 1 ¶¶ 1, 7.) Prior to December 20, 2023, a one-story structure (the "Structure") existed on the Property. (*Id.* ¶¶ 7, 21.) Plaintiff never resided at the Property, but she used the Structure to store construction materials, personal property, and other valuable materials. (*Id.* ¶ 8.)

On December 18, 2023, Plaintiff received a phone call from Rybakowski, a supervisor with the City's Department of Licenses and Inspections ("L&I"), allegedly informing her that he had decided to demolish the Structure unless Plaintiff took immediate action. (ECF No. 1 ¶ 9.) At the time, Rybakowski purportedly provided no explanation as to why he decided that the Structure needed to be demolished. (*Id.*) Immediately after the call with Rybakowski, Plaintiff engaged a licensed professional engineer to assess the condition of the Structure, inspect the Property, and recommend critical repairs. (*Id.* ¶¶ 10–11.)

On December 22, 2023, Plaintiff received, via certified mail, a Violation Notice and Order to Correct (the "Violation Notice") from L&I. (*Id.* ¶¶ 12, 15; *see also* ECF No. 1-1.) The Violation Notice was dated December 19, 2023.[3] (ECF No. 1 ¶¶ 12, 15.) The Violation Notice stated that the City had deemed the Property "imminently dangerous" and that Plaintiff was responsible for taking corrective action for the violations identified in the notice. (*Id.* ¶ 12; *see also* ECF No. 1-1 at 1.) The Violation Notice identified four violations of the Philadelphia Code based on three

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] The envelope containing the mailed Violation Notice was postmarked December 21, 2023. (ECF No. 1 ¶ 15; *see also* ECF No. 1-2.)

emergent structural conditions: the Structure's "main roof partially collapsed," the "right side bearing wall partially collapsed," and the "front wall fractured and bulged." (ECF No. 1-1 at 1–3.) The Violation Notice ordered Plaintiff to "make repairs and/or take the necessary action to correct the cited conditions prior to 12/28/2023." (*Id.* at 1; ECF No. 1 ¶¶ 13–14.) The Violation Notice further stated that if Plaintiff failed to correct the violations before December 28, 2023, L&I would "take action as soon as possible to vacate and demolish the imminently dangerous structure." (ECF No. 1 ¶ 13; ECF No. 1-1 at 1.) After receiving the Violation Notice, Plaintiff continued to work with an engineer,[4] who submitted a Structural Condition Assessment report to the City on behalf of Plaintiff on December 27, 2023. (*Id.* ¶¶ 16–17; *see also* ECF No. 1-3.) The report did not recommend demolition of the Structure but proposed several repairs that Plaintiff was prepared to complete in their entirety. (ECF No. 1 ¶¶ 18–19.)

Unbeknownst to Plaintiff, on or about December 20, 2023,[5] the City, "at Rybakowski's direction," commenced demolition of the Structure.[6] (*Id.* ¶ 21.) The value of the Structure exceeded $100,000. (*Id.* ¶ 22.) The City also removed over $36,000 worth of Plaintiff's personal property contained within the Structure. (*Id.* ¶ 23.) The City Defendants did not compensate

---

[4] Plaintiff does not assert that she appealed the Violation Notice.

[5] The City Defendants assert that the Structure was demolished on or about December 22, 2023. (ECF No. 8 at 4.) Regardless, whether the demolition was on December 20 or December 22, they do not dispute that demolition of the Structure began before the December 28, 2023 cure deadline indicated in the Violation Notice. (*Id.* at 7.) Since the Court accepts all well-pleaded facts in the Complaint as true, and Plaintiff's allegations as to the date of the demolition are not contradicted by the exhibits to the Complaint, *see Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111–12 (3d Cir. 2018) (concluding that exhibits to the complaint control where they "contradict [plaintiff's] allegations in the complaint"), the Court accepts Plaintiff's allegation that the Structure was demolished on or about December 20, 2023.

[6] Plaintiff does not allege that Defendant PPC was involved, in any way, in the demolition of the Structure in December 2023 and "does not base her claims against [PPC] on that act." (*See* ECF No. 27 at 1.)

Plaintiff for the value of the property—personal or real—and did not provide her with an opportunity to seek compensation. (*Id.* ¶¶ 24–25.)

After the demolition was complete, Plaintiff secured the front and rear of the vacant Property with wooden fences. (*Id.* ¶ 29.) She affixed to the fence signs that stated: "No Dumping or Trespassing." (*Id.* ¶ 30.) In May 2024, the City, "at Rybakowski's direction" and through its "agent" Defendant PPC,[7] removed the fences and began using the Property as a staging area for construction on nearby properties. (*Id.* ¶¶ 31–32.) Defendant PPC physically occupied the Property by placing a dumpster, construction equipment, used tires, and other materials on it. (*Id.* ¶¶ 32–33.) Plaintiff never authorized Defendants to use the Property for any purpose, and Defendants never sought permission to do so. (*Id.* ¶ 34.)

Following the demolition and related asbestos abatement on the Property, the City charged Plaintiff $123,076.36 for the costs of demolition and abatement, plus interest and penalties. (*Id.* ¶¶ 26–27.) The City also placed liens against Plaintiff and threatened legal action against her if she did not pay the City's invoices. (*Id.* ¶ 28.) In response, before initiating the present action, Plaintiff pursued administrative remedies by appealing the City's imposition of costs to the Philadelphia Tax Review Board (the "TRB"). (ECF No. 13-1 ("Certified Record of the TRB").) On March 4, 2024, Plaintiff filed petitions for appeal with the TRB, requesting review of the demolition costs assessed by L&I. (*Id.* at 2.) On October 31, 2025, the TRB upheld the imposition of costs but abated in full the interest and penalties previously assessed by the City since Plaintiff "never had an opportunity" to respond to the Violation Notice. (*Id.* at 2–4.)

[7] PPC acknowledges that it was hired by the City to perform demolitions and other construction near the Property on behalf of the City. (ECF No. 24 ¶ 56; ECF No. 24-2 at 7.)

Plaintiff subsequently appealed the TRB's decision to the Pennsylvania Court of Common Pleas of Philadelphia County. (ECF No. 20.) On July 13, 2026, the Court of Common Pleas issued an order affirming in part and reversing in part the decision of the TRB.[8] (ECF No. 20-1 at 1.) The court found that the City violated its statutory scheme by immediately demolishing the Structure despite previously determining that Plaintiff would be allowed ten days to apply for a make-safe permit. (*Id.* at 1–2.) The court reversed the TRB's decision "to the extent it charged the property owner with demolition costs" and affirmed the abatement of penalties and interest. (*Id.* at 2.)

**B. Procedural History**

Plaintiff filed her Complaint (ECF No. 1) in the Eastern District of Pennsylvania on December 15, 2025, asserting claims against all Defendants for various violations of the Fourteenth (Counts I and II), Fourth (Count III), and Fifth Amendments (Count IV) to the U.S. Constitution under 42 U.S.C. § 1983. Plaintiff brings a claim against only Rybakowski for conspiracy to violate civil rights under 42 U.S.C § 1985 (Count V). Finally, Plaintiff asserts claims against all Defendants under Pennsylvania common law for trespass (Count VI) and conversion (Count VII). The City Defendants timely filed a motion to dismiss on February 17, 2026. (ECF No. 8.) Defendant PPC timely filed a motion to dismiss on August 10, 2026. (ECF No. 24.)

On July 14, 2026, Plaintiff filed a Notice of Supplemental Authority (ECF No. 20), attaching the Court of Common Pleas decision. (ECF No. 20-1.) In light of the supplemental

[8] The Court takes judicial notice of both the Certified Record of the TRB (ECF No. 13-1) and the order of the Court of Common Pleas following Plaintiff's appeal of the TRB decision (ECF No. 20-1) because they are both public records of which the Court can properly take judicial notice at the pleading stage. *See Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641, 656 (E.D. Pa. 2026); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include . . . letter decisions of government agencies[] and published reports of administrative bodies." (citations omitted)).

authority, the Court ordered supplemental briefing by the City Defendants (ECF No. 22), which was completed on August 13, 2026. The motions are now ripe for disposition.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The complaint must allege only enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).

The Court generally considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). Relatedly, the Court "may consider an undisputedly authentic document that a defendant attaches as an

exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[9] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279–80 (3d Cir. 2018). If attachments to the complaint contradict the allegations in the complaint, then "the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

Applying the principles of *Twombly* and *Iqbal*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a Rule 12(b)(6) motion. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). A court is tasked with: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV. DISCUSSION

### A. Collateral Estoppel

Before reaching the merits of the motions to dismiss, the Court addresses the collateral estoppel argument raised in the City Motion and supplemental briefing. The City Defendants assert that collateral estoppel precludes the Court from adjudicating Plaintiff's current claims because

[9] The City Motion includes over forty pages of exhibits, many of which—despite their annotations—are "undisputedly authentic" and directly related to Plaintiff's claims. (*See, e.g.*, ECF No. 8-1 at 11–14 (Ex. D, Violation Notice and Order to Correct); *id.* at 18–19 (Ex. F, Abatement Work Invoice No. WO-2023-013544); *id.* at 23–25 (Ex. H, Asbestos Inspection Report and Abatement Work Invoice No. WO-2023-013765).) However, the City Defendants' exhibits also include numerous photographs and other documents (*id.* at 2–5, 7, 9, 16), whose authenticity is called into question by Plaintiff. (ECF No. 10 at 4 n.1.) Additionally, several of the City Defendants' exhibits relate to averments and other statements of fact made by Defendants that are well outside the scope of the allegations in the Complaint underlying Plaintiff's claims. (*See, e.g.*, ECF No. 8-1 at 7, 9, 33–44; ECF No. 24 ¶ 66; ECF No. 24-2 at 7–9.) Accordingly, it is not proper to, and the Court does not, consider such exhibits at this stage.

the core issue—the lawfulness of the City's conduct—has already been determined by the Court of Common Pleas. (ECF No. 8 at 17; ECF No. 23.) Plaintiff asks that determinations from the same decision bind the City Defendants. (ECF No. 25.)

Since the Court is being asked to give preclusive effect to a Pennsylvania state court judgment, the Court applies the Pennsylvania law of preclusion. *See Bush v. Wexford Health Prof. Servs.*, No. 13-cv-01576, 2014 WL 295067, at *3 n.2 (W.D. Pa. Jan. 23, 2014) (citing 28 U.S.C. § 1738); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–81 (1985). "Claim preclusion prevents a party from prevailing on issues he might have but did not assert in the first action," whereas collateral estoppel, or issue preclusion, bars reexamination of issues that were "actually litigated and essential to the decision" in an "earlier judgment." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988) (citing *Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*, 581 F.2d 62, 67 (3d Cir.1978)). Here, the question is whether and to what extent the Court of Common Pleas decision collaterally estops—or issue precludes—the parties in the present matter.

Under Pennsylvania law, collateral estoppel applies where:

> (1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Serv.*, 214 F.3d 402, 405–06 (3d Cir. 2000) (quoting *Rue v. K–Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)). Some courts add a fifth factor that the resolution of the issue must be "essential to the judgment." *In re Coatesville Area Sch. Dist.*, 244 A.3d 373, 381 (Pa. 2021). When an issue of fact has been fully litigated in an earlier proceeding and satisfies the elements of issue preclusion, that determination will be binding on later matters, irrespective of "differences between the public policies affected by the subsequent civil litigations . . . ." *Jones*, 214 F.3d at 406. Issue preclusion is an affirmative defense that may be raised in a motion to dismiss. *Tripodi v. North*

*Coventry Township*, No. 12-cv-04156, 2013 WL 4034372, at *5–6 (E.D. Pa. Aug. 8, 2013) (citing *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972)).

The threshold determination before the Court is which "issue" was presented and decided by the Court of Common Pleas and, therefore, should have preclusive effect. The City Defendants appear to assert that the Court of Common Pleas determined the issue that even though the demolition violated the City's regulatory scheme, the decision to demolish the Structure was not, in and of itself, unlawful. The City Defendants further contend, based on this determination, that Plaintiff's Fourteenth and Fourth Amendment claims (Counts I–III) are precluded because the "Court of Common Pleas contemplated and ruled on Plaintiff's first, second, and third causes of action under the Fourteenth and the Fourth Amendment (including the corresponding demands for relief, subsection a–d)." (ECF No. 23 at 2.) On the other hand, Plaintiff asserts that the issue adjudicated by the Court of Common Pleas was limited to the finding that the City determined Plaintiff had ten days to act yet failed to comply with its own regulatory scheme in demolishing the Structure beyond the cure window lapsed. A plain reading of the Court of Common Pleas decision demonstrates that Plaintiff's interpretation is correct.

As described *supra* in Section II.A.3, the Court of Common Pleas held that because the City violated its statutory scheme in demolishing the Structure before the cure deadline stated in the Violation Notice, the City was not permitted to impose upon Plaintiff the costs, nor penalties and interest, of the demolition and related asbestos abatement. After outlining the standard of review, the Court of Common Pleas stated that when the City intends "to charge costs associated with demolition," it is permitted to do so only "if the City complies with the procedures prescribed by the" applicable sections of the Philadelphia Code. (ECF No. 20-1 at 1.) In such situations, the City is tasked, under the Code, with determining whether a property poses a danger "so hazardous

there is no time to communicate with the property owner," or, alternatively, whether "there is time to give the property owner a deadline by which they must communicate their intentions for abating the risk." (*Id.*) For the Property, the City "determined the risk presented by the property allowed a period of 10 days for the owner to apply for a make-safe permit." (*Id.*) The court continued: "The City, however, then proceeded to demolish the property immediately—before the deadline it had communicated to the property owner and in violation of the process set forth in the regulatory scheme." (*Id.*) Therefore, under the applicable regulations, the City was not permitted to assess costs against Plaintiff for the demolition of the Structure. (*Id.*)

The City Defendants ask the Court to apply collateral estoppel here to an issue that is not identical to the legal issue adjudicated by the Court of Common Pleas. The Court of Common Pleas did not rule on or otherwise address any of Plaintiff's causes of action enumerated in her Complaint.[10] Specifically, the Court of Common Pleas opinion did not make any determinations about the lawfulness or reasonableness of the demolition nor, as the City Defendants concede (ECF No. 23 at 2), the adequacy of process afforded to the Plaintiff, whether Fifth Amendment takings occurred, or Plaintiff's common law claims. Moreover, the opinion did not contemplate or comment in any way on Plaintiff's allegations about the May 2024 removal of fencing surrounding the Property and Defendants' use of the Property as a staging area; that later-in-time issue was not before the Court of Common Pleas. The court concluded, with respect to the December 2023

[10] The Court of Common Pleas decision did not address the City's arguments that (1) Plaintiff cannot challenge the TRB decision and demolition because she failed to exhaust administrative remedies, and (2) her petitions of appeal were untimely and thus could not have been granted. *See* Brief of Appellee, City of Philadelphia, in Support of the Decisions of the Tax Review Board 13–21, *In re: Appeal of Selective Real Est. Grp. LLC*, Nos. 03310, 03311, 03312 (Pa. Ct. Com. Pls., Phila. Cnty. May 4, 2026). Since those arguments were not specifically addressed in the Court of Common Pleas opinion, issue preclusion does not apply. *See Gregory*, 843 F.2d at 121 (finding that issue preclusion did not apply to bar a claim not specifically ruled on in prior litigation).

demolition of the Structure, that the City (1) made a determination that immediate demolition without notice was not necessary, (2) provided Plaintiff with a cure deadline of December 28, 2023, and (3) violated its regulatory scheme when it demolished the Structure before the compliance deadline. The Court is collaterally estopped from re-determining these factual issues that were already specifically addressed and ruled on by the Court of Common Pleas.

Not only are the factual issues addressed by the Court of Common Pleas identical to factual issues raised in the present matter, but the prior action also resulted in a final judgment on the merits: the court's disposition was entered on July 14, 2026, and became final after the City had not filed a notice of appeal once the time to do so had expired.[11] Furthermore, the parties against which this issue would have preclusive effect—Plaintiff and the City Defendants—are the same, or in privity with,[12] the parties to the prior litigation. Finally, the state court record demonstrates that the parties had ample and fair opportunity to fully litigate these issues, which were essential to the Court of Common Pleas's judgment that the City was not entitled to assess the cost of demolition on Plaintiff since the demolition occurred in violation of the City's regulatory scheme.

---

[11] Similarly, since the Court of Common Pleas decision resulted in a final judgment, the City Defendants' argument that the Court should engage in *Younger* abstention is denied as moot since there is no pending related state proceeding. (*See* ECF No. 8 at 17.)

[12] "Privity is defined as a 'mutual or successive relationship to the same rights of property. In its broadest sense, privity is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007) (quoting *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super. Ct. 1995)). While Rybakowski was not a party to the TRB appeal, he is in privity with the City by virtue of being an agent and/or officer of the City. *Parke Bank v. Spaeder*, 358 A.3d 668 (Pa. Super. Ct. 2026) (table) ("[T]he Restatement (Second) of Judgments applies principles of *res judicata* to different parties where one is vicariously responsible for the conduct of another, such as principal and agent or master and servant" (quoting *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1317 (Pa. Super. Ct. 1983))).

Accordingly, since the Court finds that the above factual issues have already been determined by another court of competent jurisdiction, this Court is bound by those determinations, as are the parties, in the present matter.

**B. Fourteenth Amendment Procedural Due Process Claims**

Plaintiff brings two separate claims alleging that, at different points in time, Defendants violated her Fourteenth Amendment rights to procedural due process. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Under the Fourteenth Amendment, "a state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." *Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). Defendants do not appear to dispute that Plaintiff had a protected property interest in the Structure and the Property. Instead, they argue that the procedures available to Plaintiff provided constitutionally adequate post-deprivation due process of law.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified); *see also Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) ("The essence of a procedural due process claim, of course, is notice and an opportunity to be heard."). Procedural due process does not require actual notice. *See Blessing Auto Repair, Inc. v. Pa. State Police*, No.

20-cv-06569, 2021 WL 3418877, at *4 (E.D. Pa. Aug. 5, 2021) (explaining that even if the plaintiff "did not receive the mailed notices sent to him until after his vehicle was sold, he was still afforded due process because public notice," *i.e.*, advertisement of the auction in the local newspaper, "is sufficient"). Due process only requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Berger v. Phila. Parking Auth.*, 413 F. Supp. 3d 412, 419 (E.D. Pa. 2019) (quoting *Mullane v. Cent. Hanover Bank & Tr.*, 399 U.S. 306, 314 (1950)).

### 1. The Demolition of the Structure by the City Defendants[13]

Plaintiff's first cause of action alleges that the City Defendants violated Plaintiff's right to procedural due process under the Fourteenth Amendment when they demolished the Structure without giving her adequate pre-deprivation opportunity to be heard. Plaintiff further alleges in the alternative that, if an emergency did exist, the City Defendants still failed to provide any meaningful post-deprivation hearing. (ECF No. 1 ¶ 64; ECF No. 10 at 7–9.) The City Defendants move to dismiss the first Fourteenth Amendment claim (Count I) under Rule 12(b)(6). (ECF No. 8 at 5–7.) The City Defendants assert that Plaintiff failed to allege a cognizable right of action with respect to her due process claims because "the City's demolition of the Spencer Property, with adequate notice, did not constitute a violation of any federally-protected right." (ECF No. 8 at 7.) They argue that a post-deprivation hearing satisfies due process requirements in this context and that Plaintiff failed to avail herself of the constitutionally adequate post-deprivation process—the

---

[13] Count I, which alleges a violation of procedural due process based on the demolition of the Structure, is brought against the City Defendants only, not PPC. (ECF No. 1 ¶¶ 59–65.) To the extent the PPC Motion argues that the claims against it must be dismissed because PPC did not carry out or assist with the December 2023 demolition of the Structure, such arguments are not necessary as PPC had no role in the demolition of the Structure and, thus, has no nexus to the Plaintiff's first Fourteenth Amendment claim. (*Compare* ECF No 24 ¶ 39–40, *and* ECF No. 24-2 at 5–6, *with* ECF No. 1 at 10, *and* ECF No. 27 at 1.)

right to appeal a Violation Notice—offered by the City, thereby precluding her current claims due to her failure to exhaust administrative remedies. However, the City Defendants' argument misapplies the standard of review and is premised primarily on facts outside the scope of the Complaint. The Court addresses and rejects each of the City Defendants' arguments in turn.

The City Defendants first assert that a post-deprivation hearing is sufficient to satisfy the constitutional requirements of procedural due process in this case. (ECF No. 8 at 7.) They concede that "Plaintiff did not receive a pre-deprivation hearing" but argue that a pre-deprivation hearing was not necessary and that the demolition of the Structure prior to the cure deadline is "inconsequential" to the current matter. (*Id.* at 7 & n.1.) Plaintiff counters that no amount of post-deprivation process is sufficient because a pre-deprivation hearing was required. (ECF No. 10 at 7–9.) Plaintiff further argues, in the alternative, that any post-deprivation process was inadequate under the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test. (*Id.*)

A "pre-deprivation hearing is generally required before a state seizes a person's property," *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 138 (3d Cir. 2010), but a "pre-deprivation hearing is not always required." *Bullard v. City of Philadelphia*, 847 F. Supp. 2d 711, 718–19 (E.D. Pa. 2012). "Where there is 'the necessity of quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing." *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)); *see also id.* ("[S]ummary administrative action may be justified in emergency situations." (quoting *Hodel v. Va. Surface Mining & Recl. Ass'n*, 452 U.S. 264, 300 (1981))); *Munoz v. City of Union City*, 481 F. App'x 754, 758 (3d Cir. 2012) (finding, in ruling on a motion for summary judgment, that the "necessity of quick action" by the state "obviated the need for a pre-deprivation hearing").

However, if the government is "faced with circumstances in which it was required to provide a predeprivation hearing . . . , then no amount of postdeprivation process could cure the [government]'s initial failure to provide a hearing." *Elsmere Park*, 542 F.3d at 417.

The Court concludes that Plaintiff has pled sufficient facts alleging that the demolition of the Structure required a meaningful pre-deprivation hearing, of which she was deprived. The City Defendants determined that the condition of the Structure did *not* require immediate action but permitted a ten-day cure period. Indeed, the Court of Common Pleas decision provides *prima facie* evidence in support of Plaintiff's claim because it concluded that the City had determined precisely that "the risk presented by the property allowed a period of 10 days for the owner to apply for a make-safe permit" (ECF No. 20-1 at 1), rather than presenting "exigent circumstance warranting immediate and decisive action" that could "obviate[e] the need for a pre-deprivation hearing."[14] *Munoz*, 481 F. App'x at 758. (*See also* ECF No. 8 at 9 (quoting *Munoz*, 481 F. App'x at 758).)

At this early stage, the Court need not reach the City Defendants' extensive arguments as to why and how they provide ample post-deprivation process to property owners who appeal violation notices and notices of demolition. Whether a post-deprivation hearing is adequate "is a question of fact not appropriate for resolution at this early stage of the litigation." *Ferebee v. Macklin*, No. 22-cv-01155, 2023 WL 4217624, at *7 (E.D. Pa. June 27, 2023). While the City Defendants assert that Plaintiff failed to avail herself of such processes in this case and, in failing to do so, forfeited her current claims, Plaintiff has adequately pled facts alleging that she was entitled to and required to have pre-deprivation process. Such allegations—reinforced by the Court

---

[14] While the City Defendants describe the premature demolition as "inconsequential" (ECF No. 8 at 7 n.1), the Court of Common Pleas decision "undermine[s] the propriety" of the City's decision because the court concluded that "pressing safety concerns" did *not* require the Structure "to be demolished as soon as possible." *Munoz*, 481 F. App'x at 758. (*See also* ECF No. 20-1.)

of Common Pleas order—satisfy Plaintiff's burden at this stage; Plaintiff has plausibly alleged that "no amount of postdeprivation process" would cure the lack of pre-deprivation hearing. *See Elsmere Park*, 542 F.3d at 417.

The City Defendants also contend, as part of their argument against Plaintiff's Fourteenth Amendment due process claim, that the tax liens placed against the Property are valid evidence of adequate post-deprivation due process. Since the Court of Common Pleas order abated the costs of demolition and affirmed the TRB's abatement of interest and penalties, the Court of Common Pleas's decision means that there are no outstanding payments owed by Plaintiff to the City, and, therefore, no valid basis exists for the City to impose or maintain tax liens against Plaintiff. Any further analysis of whether the TRB hearing process and appeal to the Court of Common Pleas amount to adequate post-deprivation process is premature.[15] *See Ferebee*, 2023 WL 4217624, at *7. Accordingly, Plaintiff's Fourteenth Amendment procedural due process claim against the City Defendants for the demolition of the Structure (Count I) survives the City Motion.

**2. The Use of the Property as a Staging Area**

The City Defendants seek to dismiss all of the claims against them. However, in their Motion, the City Defendants present no argument about why the Fourteenth Amendment due process claim regarding *the deprivation of the Property for staging* should fail. Indeed, the City Motion focuses its arguments on the reasonableness of the City's actions, the exercise of the City's

[15] The City Defendants' analogy to *Munoz* is likewise inapt. (*See* ECF No. 8 at 13 (citing *Munoz*, 481 F. App'x at 759).) The *Munoz* opinion arose in the meaningfully different procedural posture of a ruling on a motion for summary judgment and involved a different regulatory scheme (the New Jersey Administrative Code) with different statutory processes (due process hearings before an appointed hearing officer). 481 F. App'x at 756–59. Plaintiff's allegations, the Certified Record of the TRB, and the Court of Common Pleas decision do not suggest that any similar mechanism for adjudicating the adequacy of due process and determining the value of costs to be imposed was offered to Plaintiff in the present matter.

police power in authorizing and conducting the demolition, and the process afforded to Plaintiff *with respect to the December 2023 demolition of the Structure*. (ECF No. 8 at 6–13; ECF No. 24-2 at 5–6.) Plaintiff has adequately alleged that she was afforded no process whatsoever for the deprivation of her property when the City Defendants decided to use it as a staging area. (*See generally* ECF No. 1.) The City Defendants have not challenged or otherwise refuted those allegations. For that reason, the City Motion is denied as to Plaintiff's claim for violation of the Fourteenth Amendment procedural due process based upon deprivation of the Property while it was used as a staging area for nearby construction and demolition (Count II).

Defendant PPC, on the other hand, asserts that the Fourteenth Amendment claim against it should fail because PPC is not a state actor for purposes of a claim brought under 42 U.S.C. § 1983. While PPC emphasizes that it was not the contractor who demolished the Structure, PPC appears to either misread or misunderstand the allegations against it; Plaintiff does not bring a claim against PPC for the demolition of the Structure. (ECF No. 27 at 1; *see also* ECF No. 1 ¶¶ 21, 59–65.) Nonetheless, PPC makes the more general argument that "perform[ing] work on behalf of the City" does not "make it a state actor." (ECF No. 24-2 at 6.)

In order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person *acting under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Whether an entity is acting "under color of law" is interpreted identically to the "state action" requirement under the Fourteenth Amendment. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). There are "three broad tests" to determine whether a private actor has engaged in state action:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the

> help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Id.* (citation modified) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)). This analysis is a fact-specific inquiry. *Id.* (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)).

PPC correctly points out that private demolition contractors are typically found to not be state actors when that finding stems solely from their contractual relationship with the government. *See Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 458–59 (E.D. Pa. 2016) (concluding, at summary judgment, that demolition contractor was not a state actor based on the facts of record because it "did not become a state actor simply because it performed the demolition on behalf of the city"); *Munoz*, 481 F. App'x at 761 (finding that, at summary judgment, a contractor conducting a demolition "pursuant to a public contract does not suffice to establish state action" by the contractor); *see also Win & Son, Inc. v. City of Philadelphia*, No. 13-cv-05977, 2014 WL 12742682, at *1 (E.D. Pa. Dec. 8, 2014) (holding that the Second Amended Complaint failed to allege that demolition contractor was a state actor because contractor did nothing more than carry out a demolition pursuant to a sub-contract with the contractor who had engaged in a demolition contract with the City). Indeed, the actions of "private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Horton v. USA Environ. Mgmt., Inc.*, No. 13-cv-03352, 2013 WL 5377284, at *4 (E.D. Pa. Sept. 24, 2013) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)).

However, not only do Defendant PPC's cited cases—*Munoz* and *Win*—occur in the distinguishable context of rulings on motions for summary judgment, but they are also factually different in a significant way: unlike in *Munoz* and in *Win*, PPC was not acting under a contract to carry out a demolition *of or related to the Property*. PPC concedes that it was "working to demolish

nearby properties, but not Plaintiff's Property" when it used the Property as a staging area at the direction of the City, as Plaintiff also sufficiently alleges. (ECF No. 24-2 at 7; ECF No. 1 ¶¶ 32–34.) Accordingly, the Court finds that, at this stage, Plaintiff has alleged facts that plausibly support an inference that PPC was, in fact, operating as a "state actor" when it occupied and used the Property "as [its] own" without any prior notice or opportunity for Plaintiff to be heard. (ECF No. 1 ¶¶ 32–34, 69.)

Accordingly, the PPC Motion is denied as to Plaintiff's claim for violation of the Fourteenth Amendment procedural due process based upon deprivation of the Property while it was used as a staging area for nearby construction and demolition (Count II).

**C. Fourth Amendment Claim**

Plaintiff asserts a claim against all Defendants for violations of the Fourth Amendment by their unlawful and unreasonable seizures of her Property without due process (Count III). Though not enumerated in separate counts, Plaintiff alleges two separate unlawful and unreasonable seizures: (1) the December 2023 demolition of the Structure, and (2) the May 2024 "invasion" of the Property. (ECF No. 1 ¶¶ 76–77.)

The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The U.S. Supreme Court has stated that a "seizure of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (citation modified). The parties in this case do not dispute that seizures of the Property occurred, first when the Structure was demolished, and later when the fences surrounding the Property were removed by the City

Defendants and the Property was occupied for use as a staging area. Rather, Defendants dispute whether the initial seizure was "reasonable."

Evaluating whether a seizure is "reasonable" is a fact-intensive inquiry that requires a "careful balancing of governmental and private interests." *Id.* at 71 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)). Further, the Fourth Amendment reasonableness of a demolition is often a question that survives even motions for summary judgment. *See, e.g.*, *Dvortsova v. City of Philadelphia*, 585 F. Supp. 3d 723, 732–33 (E.D. Pa. 2022) (finding that Plaintiff's "Fourth Amendment claim survives summary judgment" because the "record leaves room to doubt the reasonableness" of whether the immediate demolition was necessary); *Bullard*, 847 F. Supp. 2d at 720–21 (holding that "a genuine issue of material fact prevents the Court from determining whether the City's decision to demolish the Property was reasonable" because the reasonableness of the demolition depended on the fact-finder's determination of credibility of witness testimony as to whether an emergency existed). *But see Win*, 162 F. Supp. 3d at 463–64 (concluding that the demolition was a "rational and reasonable seizure" because the City demolished the property at issue "according to their valid procedures" and no record evidence contradicted the designation of the property as "imminently dangerous"). Defendants, as set forth below, move to dismiss this claim pursuant to Rule 12(b)(6). The Court addresses each argument in turn.

**1. The Demolition of the Structure by the City Defendants**

The City Defendants argue that Plaintiff's Fourth Amendment claim should be dismissed because "the demolition of the Spencer Property cannot be deemed an unreasonable seizure." (ECF No. 8 at 13.) The City Defendants, citing their own exhibits, contend that they provided proper notice of the demolition to Plaintiff, thereby making the seizure "reasonable" since the Structure was "visibly at risk of collapse and was a danger to the public." (*Id.*) This argument, however,

turns a blind eye to the appropriate standard of review. The analysis at this stage is not whether, based on the City Defendants' proffered, unauthenticated exhibits, the demolition was reasonable. At this stage and based on the present Motion, the question before the Court is whether Plaintiff has sufficiently pled facts plausibly alleging that any such seizure was unreasonable. The Court finds that Plaintiff has.[16] Thus, the City Motion as to Plaintiff's Fourth Amendment claim for unreasonable seizure of the Property due to the December 2023 demolition of the Structure (Count III) is denied.

**2. The Use of the Property as a Staging Area**

As noted in the preceding section, although the City Defendants seek to dismiss all of the claims against them, they presented no argument about why the Fourth Amendment claim regarding *the seizure of the Property for use as a staging area* should fail. Again, the City Motion focuses its arguments on the reasonableness of the City's actions *with respect to the December 2023 demolition of the Structure*. (ECF No. 8 at 13.) Plaintiff has sufficiently alleged that the intentional seizure of her property for its use as a staging area was unreasonable and done without a lawful purpose. (*See generally* ECF No. 1.) The City Defendants have not challenged or otherwise refuted those allegations. For that reason, receiving no argument to the contrary, the City Motion is denied as to Plaintiff's claim for violation of the Fourth Amendment as to the second seizure of the Property (Count II).

---

[16] The Court has already addressed that, based on Plaintiff's allegations, there is sufficient basis to support the inference that proper notice was not given and that adequate recourse was not available, *see supra* Section IV.B.1, thereby rendering the seizure unreasonable. The Court of Common Pleas order provides additional *prima facie* evidence that the demolition of the Structure was an unreasonable seizure. At this stage of the proceedings, it is premature for the Court to look beyond the pleadings and conduct any further fact-intensive analysis into the reasonableness of the seizure.

Defendant PPC similarly argues that Plaintiff's Fourth Amendment claim against it should fail because it was "acting under its contract with the City, who seized the property due to imminent danger." (ECF No. 24-2 at 7.) In contrast to its argument against Plaintiff's Fourteenth Amendment claim, here, PPC contends that it is shielded from the Fourth Amendment claim because the City's seizure of the Property was reasonable and, further, because PPC was not involved in the demolition of the Structure. (*Id.* at 7–8.) Plaintiff's claims against PPC arise from *its use of the Property as a staging area in May 2024*, not the demolition of the Structure in December 2023. Neither PPC nor the City Defendants argue that the City's May 2024 seizure of the Property—destroying the fences and seizing the vacant lot for use as a staging area—was a reasonable exercise of the City's police power. Again, having not received any argument to the contrary, the Court finds that Plaintiff has sufficiently pled facts alleging that PPC unreasonably seized the Property in May 2024. The PPC Motion is denied as to Plaintiff's Fourth Amendment claim (Count III).

### D. Fifth Amendment Claim

Plaintiff's fourth cause of action alleges that Defendants have violated the Fifth Amendment by taking both her personal property and real property for public use without just compensation (Count IV). Plaintiff does not allege that the demolition of the Structure is a complete taking of the entire value of her property but is, instead, a taking of the value of the improvements and personal property. (ECF No. 1 ¶ 85; ECF No. 10 at 11.) Plaintiff separately alleges that the use of the Property as a staging area was a taking for public use without compensation. (ECF No. 1 ¶ 86; ECF No. 10 at 11.) Defendants put forth, in their respective Motions, the same argument that Plaintiff's claim fails as a matter of law because she retained a possessory interest in the Property. (ECF No. 8 at 14–15; ECF No. 24-2 at 8–9.)

The Fifth Amendment, made applicable to state and local governments through the Fourteenth Amendment, declares that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *see also Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022). "When a state directly appropriates private property, it is considered a *per se* taking, and the state has a duty to compensate the owner." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370–71 (3d Cir. 2012). The Takings Clause applies with equal force to physical appropriation of real and personal property. *Horne v. Dep't of Agriculture*, 576 U.S. 351, 357–58 (2015). "[A] physical appropriation is a taking whether it is permanent or temporary; the duration of the appropriation bears only on the amount of compensation due." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021). However, "a taking has not occurred simply because a plaintiff has been denied the most profitable use of the property." *Nekrilov*, 45 F.4th at 670; *see also Munoz*, 481 F. App'x at 759.

The Court concludes that Plaintiff has adequately stated a claim for violations of the Fifth Amendment. While it is true that Plaintiff retained a possessory interest in the Property following the demolition of the Structure,[17] Plaintiff plausibly alleges that the improvement on her property (the Structure) and personal property contained therein were physically taken from her without any compensation from the City or their agents. (ECF No. 1 ¶¶ 22–24; ECF No. 10 at 11.) Plaintiff does not dispute Defendants' argument that she retained some possessory interest in her property after the demolition—that is, at least until Defendants occupied her property beginning in May

---

[17] Two of the key cases relied on by Defendants arose in the context of regulatory takings. *See, e.g.*, *Belfi v. City of Philadelphia*, No. 23-cv-03062, 2024 WL 3927212, at *6–7 (E.D. Pa. Aug. 23, 2024) (stating that plaintiff's Fifth Amendment Takings Clause claim arose from zoning and loss of permits); *Nekrilov*, 45 F.4th at 669 ("[T]here has been no physical taking of the plaintiffs' property . . . ."). Defendants appear to disregard the relevant fact that, in this instance, Plaintiff's alleged takings involved physical deprivation of both real *and personal* property.

2024. However, that does not preclude her claim for a violation of the Takings Clause based on the taking of her personal property without compensation. Further, Defendants, in their respective Motions, make no argument about why the Fifth Amendment Takings Clause claim regarding *the use of the Property as a staging area* should fail. Therefore, the Court finds that Plaintiff plausibly alleges a *per se* violation of the Takings Clause based on Defendants' occupation and use of her property as a staging area, without *any* compensation, beginning in May 2024.

For the foregoing reasons, Plaintiff's Fifth Amendment claim survives the motions to dismiss. The City Motion and the PPC Motion are denied as to Count IV.

**E. Qualified Immunity for Defendant Rybakowski**

Having established that Plaintiff adequately alleged violations of her constitutional rights, the Court now addresses the City Defendants' argument that Plaintiff's constitutional claims against Rybakowski must be dismissed because he is entitled to qualified immunity. Plaintiff counters that she alleged sufficient facts at this stage to support the finding that Rybakowski is not shielded by qualified immunity for his conduct in authorizing and directing the demolition of the Structure without adequate pre- or post-deprivation process.

Qualified immunity is an affirmative defense that "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The analysis for determining if qualified immunity applies looks to "(1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was 'clearly established.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "A right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would

understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 202). At the motion to dismiss stage, the Court looks only "to the complaint to see whether there is any set of facts plaintiff can allege that would support a denial of immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1461–62 (3d Cir. 1992).

The Court finds that Plaintiff has not, at this stage, pled sufficient facts that support a denial of immunity for Rybakowski. As set forth above, *see supra* Section IV.B.1, Plaintiff adequately alleges that the demolition of the Structure occurred without constitutionally adequate pre- or post-deprivation process. She has also sufficiently pled facts demonstrating that Rybakowski, a supervisor with L&I, was somehow involved in the decision to demolish the Structure and that he notified her of the City's intent to do so. (ECF No. 1 ¶ 9.) However, Plaintiff offers no more than the conclusory statement that the demolition occurred "at Mr. Rybakowski's direction" to support the finding that *his* conduct, specifically, violated Plaintiff's constitutional rights. (*Id.* ¶ 21.) Plaintiff makes the same conclusory statement, but adds "upon information and belief," to support her assertion that Rybakowski directed the May 2024 use of the Property as a staging area. (*Id.* ¶ 31.) The Court declines to infer, from these bare-bones allegations, that Rybakowski individually engaged in violations of Plaintiff's constitutional rights. Accordingly, Plaintiff's constitutional claims against Rybakowski (Counts I through IV) are dismissed without prejudice.

**F. 42 U.S.C. § 1985 Conspiracy Claim**

Plaintiff's fifth cause of action, brought solely against Rybakowski, alleges that Rybakowski engaged in a conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. § 1985. The City Defendants argue that Plaintiff has failed to adequately plead a claim for conspiracy. Section 1985 establishes a cause of action for conspiracy to interfere with civil rights. In particular, § 1985(3) provides a right of action when "two or more persons in any State or

Territory conspire . . . , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3); *see also Farber v. City of Paterson*, 440 F.3d 131, 134–35 (3d Cir. 2006). To make out a violation of § 1985(3),

> the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). Plaintiff must allege more than the "bare legal elements" of the cause of action, and "the rote pleading of 'conspiracy' is insufficient to state a claim." *Waris v. Mackey*, No. 09-cv-01103, 2009 WL 4884204, at *12 (E.D. Pa. Dec. 15, 2009) (citing *Twombly*, 550 U.S. at 556).

The Court holds that Plaintiff has not sufficiently pled a claim for conspiracy to violate civil rights under § 1985. Plaintiff pleads that Rybakowski was engaged in a conspiracy, with others, to violate her civil rights and that Rybakowski took overt action in furtherance of the conspiracy. (ECF No. 1 ¶¶ 88–89; ECF No. 10 at 16.) However, Plaintiff's allegations amount to nothing more than a rote recitation of the elements of the cause of action. Plaintiff fails to indicate who Rybakowski conspired with and in what way(s), if at all, he intentionally deprived her of her constitutional rights. While Plaintiff may be able to cure this deficiency in a future amended complaint, such threadbare statements of the law, without any additional factual support, are insufficient to sustain the claim at this time. Therefore, Plaintiff's § 1985 conspiracy claim against Rybakowski is dismissed without prejudice.

### G. Common Law Claims: Trespass & Conversion

Plaintiff brings claims against all Defendants for trespass (Count VI) and conversion (VII) under Pennsylvania common law. Defendants argue, in their respective Motions, that the City's police power authorized it to enter the Property and take possession of everything on the premises to carry out the demolition. (ECF No. 8 at 16; ECF No. 24-2 at 4–5.) The PPC Motion emphasizes that it, as a private contractor, has authority to exercise the privileges of the government—in this case, to enter the Property and "take possession of the premises and belongings thereon"—when the government has delegated such responsibility to the contractor. (ECF No. 24-2 at 4–5.)

"Under Pennsylvania law, [o]ne is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other, or causes a thing or a third person to do so." *Win & Son, Inc. v. City of Philadelphia*, 178 F. Supp. 3d 234, 245 (E.D. Pa. 2016) (alterations in original) (quoting *Liberty Place Retails Assocs., L.P. v. Israelite Sch. of Universal Prac. Knowledge*, 102 A.3d 501, 506 (Pa. Super. Ct. 2014)). Conversion, on the other hand, "is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Sterling v. Redevelopment Auth. of City of Phila.*, 836 F. Supp. 2d 251, 270 (E.D. Pa. 2011) (quoting *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)). "The elements of a claim for conversion under Pennsylvania law are: (1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification." *Ockley v. Radnor Township*, 802 F. Supp. 3d 743, 764 (E.D. Pa. 2025) (quoting *Rapid Cirs., Inc. v. Sun Nat'l Bank*, No. 10-cv-06401, 2011 WL 1666919, at *8 (E.D. Pa. May 3, 2011)). "[R]eal property cannot be the subject of an action for conversion" under Pennsylvania law, but "a cause

of action for conversion may be maintained for almost all kinds of *personal* property." *Walker v. Wray*, No. 25-cv-00716, 2026 WL 1382585, at *7 (E.D. Pa. May 18, 2026) (first quoting *Sterling*, 836 F. Supp. 2d at 270; and then quoting *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 573 (E.D. Pa. 2015)).

Plaintiff adequately alleges, and the City Defendants do not contest, that they intentionally entered the Property and thereby deprived Plaintiff of her use and possession of personal property without her consent at the time of the December 2023 demolition. Relying on *Win*, the City Defendants contend that they did so with lawful justification. (ECF No. 8 at 16 (citing *Win*, 178 F. Supp. 3d at 243–45); ECF No. 24-2 at 4–5 (quoting *Win*, 178 F. Supp. 3d at 243–45).). However, in light of the alleged due process violations discussed at length above, the Court finds that the Complaint plausibly alleges that the City Defendants lacked the right to enter and demolish her property. To the extent that Defendants may have been entitled to lawfully enter the Property and take possession of all of the personal property thereon, Plaintiff correctly articulates that such argument relies on exhibits and factual assertions outside of the pleadings. Therefore, the City Motion is denied as to the claims for trespass and conversion insofar as those claims relate to the December 2023 demolition of the Structure.

Once again, however, Defendants make no argument that their purported "police power" authorized entry into the Property or deprivation of Plaintiff's property—that is, by removal of the fences—in May 2024 when they began *using the Property as a staging area* for nearby demolitions and construction. The PPC Motion essentially restates the argument made in the City Motion, but neither Motion addresses the fact that the Property was a vacant lot without any "needed demolition" at that point in time. Plaintiff sufficiently pled facts alleging that Defendants committed trespass when they occupied her property as well as conversion by removing her fences.

Therefore, Plaintiff's claims for trespass (Count VI) and conversion (Count VII) survive the City Motion and the PPC Motion. Thus, both Motions are denied as to Counts VI and VII.

## V. CONCLUSION

For the foregoing reasons, the City Motion is granted in part and denied in part, and the PPC Motion is denied. The City Motion is denied as to the City for Plaintiff's Fourteenth (Counts I and II), Fourth (Count III), and Fifth Amendment (Count IV) claims. The City Motion is granted as to Rybakowski for Plaintiff's Fourteenth (Counts I and II), Fourth (Count III), and Fifth Amendment (Count IV) claims. The City Motion is granted as to the conspiracy to violate civil rights claim under 42 U.S.C. § 1985 (Count V). The City Motion is denied as to Plaintiff's trespass (Count VI) and conspiracy (Count VII) claims. The PPC Motion is denied as to all claims (Counts II, III, IV, VI, and VII).

An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**